UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JOSE SERRANO ORTERO; EDWIN VALENTIN ARROYO; and FRANCISCO J. RODRIGUEZ TORRES individually and on behalf of all other individuals similarly situated,

Plaintiffs,

v.

PFIZER INC.; PFIZER PHARMACEUTICALS, LLC; PFIZER CORPORATION; ADMINISTRATIVE COMMITTEE OF THE PFIZER SAVINGS PLAN FOR EMPLOYEES RESIDENT IN PUERTO RICO; ADMINISTRATIVE COMMITTEE OF THE PFIZER SAVINGS AND INVESTMENT PLAN FOR EMPLOYEES RESIDENT IN PUERTO RICO; SAVINGS PLAN COMMITTEE OF PFIZER, INC.; INVESTMENT COMMITTEE OF THE WARNER LAMBERT SAVINGS AND STOCK PLAN FOR COLLEAGUES IN PUERTO RICO; ; ROBERT N. BURT; TIM L. COWLEY; TERESA M. HOLLAND; WILLIAM R. HOWELL; STANLEY O. IKENBERRY; YVONNE R. JACKSON; SHARON A. KINSMAN; ALAN G. LEVIN; GEORGE A. LORCH; HENRY A. MCKINNELL; SYLVIA MONTERO; RENE MORALES; ROBERT W. NORTON; RICHARD A. PASSOV; LOUIS PRADO; FRANKLIN D. RAINES; CARLOS H. DEL RIO; WILLIAM J. ROBISON; DAVID L. SHEDLARZ; M.P. TARNOK; BARRY H. WESTGATE; C.L. CLEMENTE; PETER CORR; CHARLES L. HARDWICK; KAREN L. KATEN; JEFFREY B. KINDLER; JOHN L. MATTINA; PAUL MILLER; GEORGE MILNE; JOHN MITCHELL; JOHN NIBLACK; NATALE RICCIARDI; WILLIAM STEELE, JR.; STEVEN McMILLAN; and JOHN DOES 1-20,

Defendants.

Case No. 1:12-cv-04536-LTS

**SECOND AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs, Jose Serrano Ortero, , Edwin Valentin Arroyo, and Francisco J. Rodriguez Torres (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, and on behalf of the retirement plans sponsored by Pfizer Pharmaceuticals, LLC and/or Pfizer, Inc. and/or Pfizer Corporation (together, "Pfizer" or the "Company") in which they were participants, allege as follows:

## I. INTRODUCTION

1. Plaintiffs were participants in one or more of the following Pfizer-sponsored retirement plans for the Company's employees in Puerto Rico: (a) the Pfizer Savings Plan for Employees Resident in Puerto Rico ("PSP Plan"); (b) the Warner-Lambert Savings and Stock Plan for Colleagues in Puerto Rico ("W-L Plan"); and (c) the Pfizer Savings and Investment Plan for Employees Resident in Puerto Rico ("PSIP Plan") (together, the "Plans").

2. Plaintiffs' allegations are based upon the investigation of Plaintiffs' counsel, which includes a review of Pfizer's filings with the U.S. Securities and Exchange Commission ("SEC"), including Pfizer's proxy statements (Forms 14A), annual reports (Forms 10-K), quarterly reports (Forms 10-Q), current periodic reports (Forms 8-K), registration statements (Forms S-8), and the annual reports (Forms 11-K) filed on behalf of the retirement plans sponsored by the Company, and subsequent amendments, a review of the Form 5500s filed by the Plans with the Department of Labor, interviews with participants of the Plans, and a review of available documents governing the operations of the Plans. Plaintiffs have also reviewed the Consolidated Second Amended Class Action Complaint for Violations of the Employee Retirement Income Security Act filed under seal in No. 04-cv-10071 *In re Pfizer ERISA Litigation* on May 23, 2012. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

3. Plaintiffs bring this class action on behalf of the individual participants thereto and on behalf of the Plans against the Plans' fiduciaries pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002, *et seq*. Plaintiffs allege that the Plans' fiduciaries breached their ERISA-imposed duties by (a) failing to diversify the Plans' assets and allowing the Plans to become over-concentrated in equity investments, including investments in Pfizer stock; (b) failing to offer a sufficiently diversified choice of investment alternatives to the Plans' participants; and (c) breaching other fiduciary duties incumbent upon ERISA fiduciaries, including the duty to loyally and prudently administer the Plans, when the Defendants knew or should have known that Pfizer stock was an imprudent investment for the Plans. Plaintiffs also bring this action under ERISA on behalf of the respective Plans in which they were participants.

4. Plaintiffs allege that Defendants should have not allowed an over-concentration of Pfizer securities in participants' accounts and should have phased out the Plans' participants' holdings of Pfizer securities. Defendants had such power according to the applicable Plan documents which gave the fiduciaries discretion to limit or remove Company stock as a Plan investment if such inclusion was not in the best interests of Plan Participants. Their failure to exercise such power was a breach of ERISA 404(a)1(D). Defendants should also have ensured that the Plan's investment alternatives were diversified across the asset classes, industries and investment style available for managed funds. Defendants' failure to ensure such diversification constitutes a breach of their fiduciary duties which has caused plan participants to suffer permanent losses to the value of their retirement accounts.

5. Plaintiffs also allege that Defendants knew or should have known that Pfizer stock was an imprudent investment at all times during the Prudence Class Period (as defined herein at

Section X)[1] because the Company was engaging in undisclosed risky and improper activities in relation to its prescription drugs, including Celebrex and Bextra, which artificially inflated the value of Company stock and threatened the Company's existence due to the risk of criminal penalties; exclusion from government programs; and risk to new drug approvals. Specifically, Plaintiffs allege that Pfizer disputed, minimized, and concealed indications that Celebrex and Bextra posed unacceptable side effects and risks of injury, including heart attack and stroke. As a result of the undisclosed risks caused by Celebrex and Bextra, and the lack of benefit these drugs offered over drugs already on the market, the value of Pfizer stock and the Plans' investments in Pfizer stock were artificially inflated, and became substantially diminished when the truth about these risks was disclosed. Such action and inaction constituted a breach of the duty of prudence under 404(a)(1)(B) of ERISA.

6. Plaintiffs allege in Count I that the Defendants responsible for investment of the assets of the Plans breached their fiduciary duties in violation of ERISA by failing to diversify the assets in the Plans and by failing to offer a diversified choice of investment alternatives to the Plans' participants. In Count II, Plaintiffs allege that Defendants breached their fiduciary duties in violation of ERISA by failing to prudently and loyally manage the Plans by continuing to offer Pfizer stock when it was no longer a prudent investment for participants' retirement savings. In Count III, Plaintiffs allege that Defendants breached their fiduciary duties by failing to disclose necessary information to co-fiduciaries, including non-public information. In Count IV, Plaintiffs allege that Defendants responsible for the selection, removal, and, thus, monitoring of the Plans' fiduciaries, failed to properly monitor the performance of their fiduciary appointees and remove and replace those whose performance was inadequate. In Count V, Plaintiffs allege

[1] Unless otherwise specified, "Class Period" refers collectively to the Prudence and Over-Concentration Class Periods defined herein at Section X.

that Defendants who communicated with Plan participants regarding the Plans' assets, or had a duty to do so, failed to provide them with complete and accurate information regarding Pfizer stock sufficient to advise participants of the true risks of investing their retirement savings in Pfizer stock. In Count VI, Plaintiffs allege that the Defendants breached their fiduciary duty of loyalty by acting in furtherance of their personal interests as employees or executives of Pfizer at the expense of the Plans' and Plaintiffs' best interests. Finally, in Count VII, Plaintiffs allege that Defendants breached their duties as co-fiduciaries by failing to prevent their co-fiduciaries from breaching their duties of prudent and loyal management, complete and accurate communications, and adequate monitoring.

7. Plaintiffs allege these claims individually and on behalf of the Classes defined herein at ¶¶ 13-14. Plaintiffs also allege these claims on behalf of the Plans themselves. ERISA §§ 409(a) and 502(a)(2) authorize participants such as Plaintiffs to sue in a representative capacity on behalf of the plans for losses suffered by the Plans as a result of breaches of fiduciary duty. Pursuant to that authority, under ERISA § 409(a) and 502(a)(2), Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of all participants and beneficiaries of the Plans whose Plan accounts were invested in Pfizer stock during the Class Period and on behalf of the Plans.

8. On behalf of themselves and the Classes and on behalf of the Plans, Plaintiffs seek to recover losses to the Plans (for which Defendants are personally liable) pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).

9. In addition, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek other equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, a constructive trust, restitution, equitable tracing, and other monetary relief.

10. **Subject Matter Jurisdiction**. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

11. **Personal Jurisdiction**. ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All of the Defendants are either residents of the United States or subject to service in the United States and the Court therefore has personal jurisdiction over them.

12. **Venue**. Venue is proper in this district pursuant to ERISA § 402(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the Plans are administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside and/or transact business in this district and all Plaintiffs reside in this district.

## II. DEFINED TERMS

As used in this Complaint, the following terms are defined as follows:

13. The "Over-Concentration Class" means all persons, other than Defendants, who were participants in, or beneficiaries of, any of the Plans which are the subject of this suit at any time between August 29, 2000 and the present and whose accounts held more than 30% of their assets in Pfizer securities or common stock funds.

14. The "Prudence Class" means all persons, other than Defendants, who were participants in, or beneficiaries of, the PSP Plan, the PSIP Plan, or the W-L Plan–at any time between August 29, 2000 and December 9, 2005, and whose accounts included investments in Pfizer stock "Company Stock Fund(s)" means an investment fund that invests primarily in Pfizer common stock. Company Stock Funds include PSIP-PR Fund C, PSIP-PR Fund D, PSP-PR Company Stock Fund, PSP-PR Pfizer Match Fund, W-L PR Plan Company Stock Fund.

15. The "Pfizer Officer Defendants" means Defendants C.L. Clemente, Peter Corr, Charles L. Hardwick, Yvonne Jackson, Karen L. Katen, Jeffrey B. Kindler, John L. Mattina,

Henry McKinnell, Paul Miller, George Milne, John Mitchell, John Niblack, Robert Norton, Natale Ricciardi, David Shedlarz and William Steele, Jr. In addition, Barry H. Westgate and Martha Newton served as Secretary to the Pfizer Leadership Team during the Class Period. The Pfizer Officer Defendants are the Pfizer executives who exercised decision making authority on behalf of The Plans and Pfizer, including approval of investment options of the Pfizer Plans. These Defendants were also members of the Leadership Team during the Class Period.

16. "Pfizer Compensation Committee Director Defendants" means the Pfizer Compensation Committee of the Board of Directors and its members, including Defendants Robert N. Burt, Stanley O. Ikenberry, George A. Lorch, and Franklin D. Raines.

17. "Pfizer Plan Committees" means collectively the administrative and investment committee(s) appointed to supervise and manage the Pfizer Plans. Records indicate that the Pfizer Plan Committees did business under various names during the Class Period, including the Savings Plan Committee, the Savings and Investment Plan Committee, the Investment Committee, and the Administrative Committee. Plaintiffs are informed and believe that all of these titles refer to the same functional body, which had certain responsibilities concerning the Pfizer Plans.

18. "Pfizer Committees Defendants" means the Pfizer Plan Committees, as well as each member of the various Pfizer Plan Committees during the Class Period, specifically Tim L. Cowley, Teresa M. Holland, William R. Howell, Yvonne R. Jackson, Sharon A. Kinsman, Alan G. Levin, Sylvia Montero, Rene Morales, Robert W. Norton, Richard Passov, Louis Prado, Carlos H. del Rio, William J. Robison, David L. Shedlarz, M.P. Tarnok, Barry H. Westgate, and John Does 1-20.

19. "Plan" means the Pfizer Plans.

## III. THE PARTIES

**A. Plaintiffs**

20. **Plaintiff Jose Serrano Otero.** During the Class Period, Mr. Serrano Otero was an employee of Pfizer and a participant in one or more of the Plans at issue in this case.

21. **Plaintiff Edwin Valentin Arroyo.** During the Class Period, Mr. Valentin Arroyo was an employee of Pfizer and has been and a participant in the Plan numbered 28040.

22. **Plaintiff Francisco J. Rodriguez Torres**. During the Class Period, Mr. Rodriguez Torres was an employee of Pfizer and a participant in the PSP Plan.

**B. Defendants**

**1. Pfizer Corporate Defendants**

23. **Pfizer Pharmaceuticals, LLC** was at all relevant times a limited liability company operating in, and pursuant to the laws of, the Commonwealth of Puerto Rico. During the Class Period, Pfizer Pharmaceuticals was the employer of participants of the PSP Plan and the PSIP Plan, and was the employer of the Plaintiffs and Class members.

24. **Pfizer Corporation** is an indirect wholly owned subsidiary of Pfizer, Inc. and is the "employer" of participants in the PSP Plan and the PSIP Plan.

25. **Pfizer, Inc.** is a Delaware corporation with its headquarters located at 235 East 42nd Street, New York, New York and is the parent company of Pfizer Corporation and Pfizer Pharmaceutical LLC. Pfizer, Inc. was a sponsor of some of the Plans for some of the Class Period and is jointly liable for its own fiduciary breaches and the fiduciary breaches of it subsidiaries, employees, agents and directors.

26. Pfizer is the successor-in-interest of the companies it acquired during the Class Period, including the Warner-Lambert Company. Thus, Pfizer is liable for any breaches of fiduciary duty committed by Warner-Lambert.

**C. Individual Defendants**

27. **The Pfizer Officer And Director Defendants.** During the Class Period, Defendants C.L. Clemente, Peter Corr, Charles L. Hardwick, Yvonne Jackson, Karen L. Katen, Jeffrey B. Kindler, John L. Mattina, Henry McKinnell, Paul Miller, George Milne, John Mitchell, John Niblack, Robert Norton, Natale Ricciardi, David Shedlarz and William Steele, Jr. were individual members of the Pfizer "Leadership Team," and were also high-ranking corporate officers of Pfizer.

28. The Leadership Team's compensation was tied directly to the performance of the Company. Leadership Team members received millions of dollars in annual salary and bonuses and, in addition, received millions of dollars in common stock, stock options, and other compensation under the Company's executive compensation incentive award plans.

a. **Defendant Yvonne R. Jackson.** During the Class Period, Ms. Jackson was Senior Vice President of Human Resources and was a member of the Pfizer Leadership Team from 2004 through 2005. As described below, Ms. Jackson was also a member of the Pfizer Plan Committee during that same time period.

b. **Defendant Henry A. McKinnell.** During the Class Period, Dr. McKinnell was Chief Executive Officer and Chairman of the Pfizer Board of Directors since 2001 and also held the titles of President of the Company from 1999 through 2001, Chief Operating Officer in 2000, President of Pfizer Pharmaceuticals Group from January 1997 through April 2001, and Chief Operating Officer from May 1999 through December 2000. Dr. McKinnell was a member of the Corporate Management Committee in 2000, the Pfizer Leadership Team from 2001 through 2005, and has served on the Pfizer Executive Committee since 2005. In addition to his other duties, as a member of Pfizer's Corporate Management Committee and thereafter of Pfizer's Leadership Team, McKinnell evaluated and made strategic decisions for the Company. McKinnell signed Company SEC filings during the Class Period, including Annual Reports on

Form 10-K for the years ending December 31, 2000 through December 31, 2005. In addition, Dr. McKinnell certified, pursuant to Section 302 of the Sarbanes-Oxley Act of 2002, that each of Pfizer's Quarterly Reports (Form 10-Q) from the third quarter of 2002 through the first quarter of 2006, *inter alia,* (1) did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report; and (2) the financial statements, and other financial information included in each quarterly report, fairly presented in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented. As discussed herein, a number of these SEC filings failed to provide complete and accurate material information regarding the Company's financial condition and the facts that rendered Company Stock and Company Stock Funds an imprudent retirement investment. During the Class Period, Dr. McKinnell sold on the open market or otherwise disposed of at least 809,000 shares of Pfizer common stock for proceeds and benefits of at least $29.7 million.

c. **Defendant David L. Shedlarz.** During the Class Period, Mr. Shedlarz was Vice Chairman of Pfizer, Inc. and also served as the Chief Financial Officer & Executive Vice President from 2000 through 2005. Mr. Shedlarz served as a member of the Corporate Management Committee in 2000, the Pfizer Leadership Team in 2001 through 2005, and has served on the Pfizer Executive Committee since 2005. In addition, as described below, Mr. Shedlarz served as a member of the Pfizer Plan Committee during the Class Period. Mr. Shedlarz signed Company SEC filings during the Class Period, including Annual Reports on Form 10-K for the years ending December 31, 1999 through December 31, 2004. Mr. Shedlarz was also the Chairman of the Investment Committee of the W.L. Plan and in that capacity signed SEC filings Form 11-Ks. In addition, Mr. Shedlarz certified, pursuant to Section 302 of the Sarbanes-Oxley

Act of 2002, that each of Pfizer's Quarterly Reports (Form 10-Q) from the third quarter of 2002 through the third quarter of 2004, *inter alia,* (1) did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report; and (2) the financial statements, and other financial information included in each quarterly report, fairly presented in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented. As discussed herein, a number of these SEC filings, failed to provide complete and accurate material information regarding the Company's financial condition and the facts that rendered Company stock and Company Stock Funds an imprudent retirement investment. During the Class Period, Mr. Shedlarz sold on the open market or otherwise disposed of at least 311,000 shares of Pfizer common stock for proceeds and benefits of at least $9.5 million.

**1. Pfizer Compensation Committee Defendants**

29. The members of the Pfizer Board of Directors who were members of the Compensation Committee were also officers and key executives of Pfizer, including heads of the Science and Technology, Research, Manufacturing, and Human Resource Departments, among others. While its precise role is unclear, during the Class Period the Compensation Committee is believed to have exercised decision-making authority over key decisions with respect to the Pfizer Plans, including selection and/or approval and/or monitoring of investments.

30. The Pfizer Director Compensation Committee Defendants had decision-making authority for Pfizer and each of its subsidiaries and Plans, including the power to appoint, remove, and monitor other Plan fiduciaries. Upon information and belief, the Compensation Committee administers the Plans at issue herein.

31. Each of the Pfizer Compensation Committee Defendants signed the Company's Annual Report filed with the SEC, Form 10-K, for the year(s) in which he or she served as a director of the Company.

32. Each of the Pfizer Compensation Committee Defendants was privy to or had access to information at the highest level of the Company. Each of the Pfizer Compensation Committee Defendants knew or should have known the true state of affairs at Pfizer, the serious and substantial problems related to Pfizer's marketing of risky products (including Celebrex and Bextra), Pfizer's liability for injuries allegedly related to those products, Pfizer's liability for improper marketing practices, and Pfizer's improper accounting practices as alleged herein. Plaintiffs allege, as described more fully in Section VIII below, that the Pfizer Compensation Committee Defendants are *de facto* fiduciaries.

33. Individual members of the Pfizer Board of Directors Compensation Committee during the Class Period are:

a. **Defendant Robert N. Burt.** Mr. Burt has been a member of the Pfizer Board of Directors and the Audit and Compensation Committees from June 2000 to the present. He has served as Chair of the Pfizer Audit Committee since 2001. Mr. Burt also served as a member of the Board of Directors of Warner-Lambert Company from 1995 to 2000 and as a member of its Investment Committee, as described below, during the Class Period.

b. **Defendant Stanley O. Ikenberry.** Dr. Ikenberry has been a member of the Pfizer Board of Directors from 1982 to the present, and, on information and belief, a member of the Pfizer Compensation Committee since 2005, Pfizer Corporate Governance Committee from 1999 through 2004, the Pfizer Science and Technology Committee from 2003 to 2005, and the Pfizer Executive Committee since 1999.

c. **Defendant George A. Lorch.** Mr. Lorch has been a member of the Pfizer

Board of Directors from June 2000 to the present, and member of the Pfizer Compensation Committee during the Class Period.

d. **Defendant Franklin D. Raines.** Mr. Raines was a member of the Pfizer Board of Directors from 1998 until April 28, 2005, and member of the Pfizer Compensation Committee and the Pfizer Science and Technology Committee during the Class Period.

**2. Pfizer Committee Defendants**

34. Each of the Plans named herein were sponsored by Pfizer Pharmaceuticals, LLC and were managed, in whole or in part, by the Pfizer Plan Committees as fiduciaries for the Plans, as described below:

a. The Pfizer Savings and Investment Plan for Employees Resident in Puerto (PSIP Plan) was managed by its Administrative Committee.

b. The Pfizer Savings Plan for Employees Resident in Puerto Rico (PSP Plan) was managed by its Administrative Committee.

c. The Warner Lambert Savings and Stock Plan for Colleagues in Puerto Rico (W-L Plan) was managed by its Investment Committee.

d. The Global Investments Committee exercised oversight over all Plans and Plan Committees.

35. While each of these Committees listed above was formally maintained by Pfizer Pharmaceuticals, LLC, the membership of these committees was virtually identical, so that in fact, a single group of individuals, defined here as the Pfizer Plan Committees, effectively managed all of the Plans during the Class Period.

36. Each of the known Pfizer Committee Defendants was a high-level officer of the Company. As a direct consequence of their high-level positions, each of the Pfizer Committee Defendants knew or should have known the true state of affairs at Pfizer, the serious and

substantial undisclosed problems related to Pfizer's marketing of risky products (including Celebrex and Bextra), Pfizer's liability for injuries allegedly related to those products, Pfizer's liability for improper marketing practices, and Pfizer's improper accounting practices as alleged herein. Plaintiffs allege, as described more fully below, that the Committee Defendants are *de facto* fiduciaries with the duty to monitor, and the duty of prudence.

37. In addition to the Pfizer Plan Committees, the Pfizer Committee Defendants are:

**a.** **Defendant Tim L. Cowley.** On information and belief, Mr. Cowley was Senior Vice President of Human Resources for Pfizer during the Class Period. Mr. Cowley also served as a member of one or more of the Plans' administrative committees, and as the Plan Administrator for the W-L Plan during the Class Period. Plaintiffs believe that Mr. Cowley has served in these capacities from June 2005 until the present. Mr. Cowley signed the 2003 Form 5500 for the W-L Plan on behalf of Pfizer.

**b.** **Defendant William R. Howell.** Mr. Howell has been a member of the Pfizer Board of Directors from June 2000 to the present. He has served as a member of the Pfizer Audit Committee since 2001, as Chair of the Audit Committee since 2005, and as a member of the Warner-Lambert Company Board of Directors from 1983 to 2000. Mr. Howell has also served as a member of one or more of the Plans' administrative committees during the Class Period.

**c.** **Defendant Carlos H. del Rio.** Mr. del Rio served as Vice President of Pfizer Pharmaceuticals, LLC and served as a member of one or more of the Plans' administrative committees during the Class Period and, in this capacity, signed the Form 11-K for the PSP Plan filed with the SEC in 2003.

**d.** **Defendant Teresa M. Holland.** On information and belief, during the Class Period, Ms. Holland served as the Assistant General Counsel and Assistant Secretary for

Pfizer. Ms. Holland also served as a member of one or more of the Plans' administrative committees, including the W-L Plan, during the Class Period.

**e. Defendant Yvonne R. Jackson.** On information and belief, Ms. Jackson served as Senior Vice President of Human Resources at Pfizer during the Class Period. Ms. Jackson also served as a member of the Pfizer Leadership Team from 2004 through 2005, and was a member of one or more of the Plans' administrative committees during the Class Period.

**f. Defendant Sharon A. Kinsman.** During the Class Period, Ms. Kinsman served as Assistant Treasurer of Pfizer and was a member of one or more of the Plans' administrative committees during the Class Period. Ms. Kinsman signed a number of relevant IRS filings, including the Form 5550s for the PSP Plan in 2003 and 2004, and for the W-L Plan for 2000 through 2002.

**g. Defendant Alan G. Levin.** On information and belief, during the Class Period Mr. Levin served as Vice President and Treasurer for Pfizer until 2000, Vice President of Finance for Pfizer from 2000 through 2003, Senior Vice President of Finance and Strategic Management for Pfizer Global Research and Development from 2003 through 2005, and Senior Vice President and Chief Financial Officer for Pfizer since March 2005. Mr. Levin also served as a member of one or more of the Plans' administrative committees during the Class Period, including the W-L Plan from at least August 2000 until August 2003. During the Class Period, Mr. Levin signed Company SEC filings during the Class Period, including the Annual Report for Year 2005 (Form 10-K), filed March 1, 2006. In addition, Mr. Levin certified, pursuant to Section 302 of the Sarbanes-Oxley Act of 2002, that each of Pfizer's Quarterly Reports (Form 10-Q) from the first quarter of 2005 through the first quarter of 2006, *inter alia,* (1) did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not

misleading with respect to the period covered by this quarterly report; and (2) the financial statements, and other financial information included in each quarterly report, fairly presented in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented.

**h. Defendant Sylvia Montero.** On information and belief, during the Class Period, Ms. Montero served as Vice President—Human Resources for Pfizer's Animal Health Group until 2001, for which she assumed additional responsibilities for Public Affairs in 2003, and as Senior Vice President-Human Resources for Pfizer's Global Research and Development from 2003 through 2005. In March 2005, Ms. Montero was appointed Senior Vice President—Human Resources for Pfizer. Ms. Montero also served a member of one or more of the Plans' administrative committees from June 2005 until the present.

**i. Defendant Rene Morales.** During the Class Period, Mr. Morales served as Administrator for the Pfizer Plans in Puerto Rico, including the PSIP Plan, the W-L Plan, and the PSP Plan, and signed the 2001 and 2002 Form 5500s for the PSP Plan as Plan Administrator.

**j. Defendant Robert W. Norton.** On information and belief, during the Class Period, Mr. Norton served as Senior Vice President-Corporate Human Resources of Pfizer. Mr. Norton also served as member of the Pfizer Leadership Team from 2001 through 2003, and as a member of one or more of the Plans' administrative committees during the Class Period, including the W-L Plan.

**k. Defendant Richard A. Passov.** During the Class Period, Mr. Passov served as Vice President and Treasurer of Pfizer, and a member and Chairman of one or more of the Plans' administrative committees, including the W-L Plan. During the Class Period, Mr. Passov signed a number of relevant SEC filings on behalf of Pfizer and the Pfizer Plan Committee, including the 2004 Form 11-K for the PSP Plan.

l. **Defendant Louis Prado.** During the Class Period, Mr. Prado served as General Manager of Pfizer Pharmaceuticals, LLC and member of one or more of the Plans' administrative committees. Mr. Prado also served as Chair of the Savings and Investment Plan Committee and in this capacity signed the 2000 through 2002 Forms 11-K for the PSIP Plan. On information and belief, Mr. Prado also served as Chief Executive Officer (Plan Administrator) and General Manager of Pfizer Pharmaceuticals, Inc.

m. **Defendant William J. Robison.** On information and belief, Mr. Robison served as Executive Vice President—Employee Resources for Pfizer Inc. during the Class Period. Mr. Robison also served as a member of one or more of the Plans' administrative committees during the Class Period, including the W-L Plan. Mr. Robison retired from the Company on January 1, 2001. It is believed that he was a member of the Pfizer Plan Committee until his retirement.

n. **Defendant David L. Shedlarz.** During the Class Period, Mr. Shedlarz was Executive Vice President and Chief Financial Officer of Pfizer from 2000 through March 2005. Since March 2005, he has served as Vice Chairman of Pfizer. He has been a member of the Pfizer Leadership Team and the Pfizer Executive Committee from 2001 through the present. Mr. Shedlarz served as member and Chair of one or more of the Plans' administrative committees during the Class Period, including the W-L Plan. On behalf of Pfizer and the Pfizer Plan Committees he chaired, Mr. Shedlarz signed a number of relevant SEC and IRS filings, including the 2000 through 2002 11-Ks for the W-L Plan.

o. **Defendant M.P. Tarnok.** During the Class Period, Mr. Tarnok was Senior Vice President, Finance and also served as a member of one or more of the Plans' administrative committees. Plaintiffs believe that Mr. Tarnock continued to serve in these capacities from June 2005 until the present.

p. **Defendant Barry H. Westgate.** During the Class Period, Mr. Westgate served as Vice President—Corporate Compensation, Benefits, and HR Information Technology, Corporate Human Resources for Pfizer Inc., and also served as a member of one or more of the Plans' administrative committees. Plaintiffs believe that Mr. Westgate continued to serve in these capacities from June 2005 until the present.

q. **Defendant John Does 1-20** are persons who served on Pfizer Plan Committees during the Class Period but whose identities are not currently known to Plaintiffs. Once their true identities are ascertained, Plaintiffs will seek to join them as Defendants under their true names. While Plaintiffs have requested information identifying all fiduciaries, information regarding the membership of these committees, or the extent to which they operated, this information has not been provided as part of the limited documents Defendants agreed to produce.

38. With respect to fiduciary communications, a number of the Plans' Summary Plan Descriptions ("SPDs") incorporated by reference Pfizer's SEC filings, thus converting such materials into fiduciary communications. A number of these SEC filings failed to provide complete and accurate material information regarding the Company's financial condition and the facts that rendered Company Stock an imprudent retirement investment, as discussed herein.

## IV. THE PLANS

### A. Nature Of The Plans

39. The Plans are subject to ERISA, but are not qualified under the IRS Code and accordingly, many of the immunities and exemptions under ERISA do not apply but the Plan fiduciaries are nonetheless subject to all of ERISA's fiduciary duties and provisions. While the Plans are not a party to this action, pursuant to ERISA, the relief requested in this action is for the benefit of the Plans under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

40. The Plans are all subject to Puerto Rico General Revenue Code 1165(e).

41. At all relevant times, the Plans had two separate components: (1) a participant contribution component; and (2) a matching component, which consisted entirely of employer contributions.

**B. Pfizer Savings And Investment Plan For Employees Resident In Puerto Rico ("PSIP Plan")**

**a. Nature And Purpose Of The Plan**

42. The Pfizer Savings and Investment Plan for Employees Resident in Puerto Rico (the "PSIP Plan") was adopted on February 1, 1990 and is open to employees of the Puerto Rico branches of Pfizer Pharmaceuticals LLC, a subsidiary of Pfizer Inc. and Pfizer Corporation.

43. One of the purposes of the PSIP Plan was to foster thrift and provide employees with additional security at retirement. As an incentive, the Company provides that it will match a portion of such savings by regular contributions.

44. The PSIP Plan did not purport to be an Employee Share Ownership Plan ("ESOP"). Nor did the PSIP Plan purport to invest primarily in Company Stock.

45. The PSIP Plan likewise did not purport to be a § 404(c) Plan.

**b. Investments In Company Stock**

46. From the start of the Class Period until February 2002, participants were allowed to contribute between 2% and 15% of their regular earnings for investment in the PSIP Plan on a before tax basis or up to 10% on an after tax basis, subject to limits in the Tax Code.

47. Contributions of up to 2% of compensation were matched 100% by Pfizer and the next 4% was matched 50% by Pfizer. As Employers, the Company had the option, at its discretion, to increase Employer contributions up to 100% of members' contributions.

48. Participants directed the investment of their contributions among three investment options in the PSIP Plan. Two of these options were diversified stock and mutual funds, but they also included a Company Stock Fund, Fund C. The match was invested in a Company Stock Fund known as "Fund D."

49. The PSIP Plan provided the Trustee or the Investment Advisor with full discretion to maintain any part of the assets of each Fund (including the Pfizer Common Stock Fund) in cash or short term securities if it deemed this necessary or desirable to accomplish the purposes of the Plan.

50. Certain restrictions applied. Dividends paid to the PSIP Plan's Fund D were automatically reinvested in Fund D unless the participant otherwise instructed. Participants were not permitted to move investments in Fund D before age 55, and were limited to such transactions) once every three months. These provisions had the effect of discouraging PSIP Plan participants from reducing their holdings in Fund D and worked against the participants' interest.

**c. Plan Control and Administration**

51. Pfizer Inc. was the PSIP Plan sponsor during the Class Period, and the PSIP Plan was administered by the Savings and Investment Plan Committee appointed and monitored by the Board of Directors. The Board of Directors, either directly or through the Committee, had the power to appoint Trustees and Investment Advisors for the Plan.

52. The Banco Popular de Puerto Rico served as Trustee of the Plan. The PSIP Plan's trust agreement provided that any portion of the Funds may be invested in short-term investments, pending its permanent investment or distribution.

**C. The Pfizer Savings Plan For Employees Resident In Puerto Rico ("PSP Plan")**

**a. Nature And Purpose Of The Plan**

53. On information and belief, the Pfizer Savings and Investment Plan for Employees Resident in Puerto Rico merged with the Warner-Lambert Savings and Stock Plan for Colleagues in Puerto Rico to become the Pfizer Savings Plan for Employees Resident in Puerto Rico ("PSP Plan") on April 1, 2003. This plan is open only to employees of the Puerto Rico subsidiaries of Pfizer, Inc. and Warner-Lambert for employees resident in Puerto Rico.

54. One of the stated purposes of the PSP Plan was to foster thrift and provide employees with the opportunity for additional security at retirement. As an incentive, the Company provided that it will match a portion of such savings by regular contributions.

55. The PSP Plan did not purport to be an ESOP. Nor did the PSP Plan purport to invest primarily in Company Stock.

56. The PSP Plan purported to be a § 404(c) Plan. On information and belief, however, the PSP Plan was not § 404(c) compliant for reasons discussed herein.

**b. Investments In Company Stock**

57. Participants direct the investment of their voluntary contributions among six investment options in the PSP Plan. Most of these options are diversified mutual funds. However, among these options is a Company Stock Fund. The PSP Plan Company Stock Fund is invested primarily in Company Stock, subject to the additional discretion of the Plan Committee, as set forth below. Nowhere does it appear that the PSP Plan Company Stock Fund is precluded from investing in cash or other non-Company stock investments.

58. Participants in the PSP Plan were permitted to defer a percentage of their base compensation for investment in the plan. From February 2002, at the PSP Plan's inception, until the present, participants were allowed to contribute up to 15% of their regular earnings (up to 10% after tax earnings or 10% before tax earnings up to a maximum of 15% of total earnings) for investment in the Plan, subject to limits in the Tax Code.

59. Pfizer matched up to the first 3% invested by participants 100%. It matched the next 3% invested by participants 50%. Participant contributions in excess of 6% were not matched by Pfizer. In the PSP Plan, the employer matching contributions were automatically invested in a Company Stock Fund known as the Pfizer Match Fund. The PSP Plan Pfizer Match Fund was invested primarily in Company Stock, subject to the additional discretion of the Plan Committee. Nowhere did it appear that the PSP Plan Match Fund was precluded from investing in cash or other non-Company stock investments.

60. Prior to January 1, 2005, dividends paid to the Company Stock Funds were automatically reinvested in the respective Funds.

61. Pfizer encouraged Participants to invest in Company Stock and the Company Stock Funds. While the PSP Plan's SPD acknowledged the higher risk of investing in a single security than a diversified portfolio, the SPD touted Company Stock and Company Stock Funds as having a higher appreciation potential. Pfizer's SEC filings, incorporated by reference into the PSP Plan SPD, touted the Company's performance and failed to disclose the facts that rendered Company Stock and Company Stock Funds an imprudent retirement investment.

**c. Plan Control And Administration**

62. Upon information and belief, Pfizer Inc. was the Plan sponsor during the Class Period and acted through the Board of Directors and/or Leadership Committee.

63. The Savings Plan Committee had fiduciary responsibility for the general operation of the Plan and authority to appoint and remove the Trustee, which was Northern Trust during the Class Period. The Committee was also responsible for carrying out the investment policies of the Plan, monitoring the investment funds and managers, and the other duties enumerated above.

**E. Warner-Lambert PR Plan ("W-L Plan")**

64. Pfizer Inc. acquired the Warner-Lambert Company ("Warner-Lambert") on June 19, 2000. On that same day, the Warner-Lambert common stock held in the Warner-Lambert Savings and Stock Plan for Colleagues in Puerto Rico ("W-L Plan") were automatically exchanged for Pfizer common stock. Additionally, the Pfizer Company Stock Fund became an investment option for the W-L Plan on that day. On April 1, 2003, the W-L Plan merged into the PSP Plan. Certain portions of the W-L Plan remained separate from the new "merged" Pfizer Savings Plan, subject to a collective bargaining agreement.

**a. Nature and Purpose of the Plan**

65. One of the stated purposes of the W-L Plan was to foster thrift and provide employees with the opportunity for additional security at retirement. As an incentive, the Company provided that it will match a portion of such savings by regular contributions.

66. The W-L Plan did not purport to be an ESOP. Nor did the W-L Plan purport to invest primarily in Company Stock.

67. Likewise, the W-L Plan did not purport to be a § 404(c) Plan, and at no time did the W-L Plan become § 404(c) compliant.

**b. Investments in Company Stock**

68. Throughout the Class Period, participants in the W-L Plan were permitted to defer a percentage of their base compensation for investment in the Plan. Before the Warner-Lambert Company merged with Pfizer, participants were allowed to contribute between 1% and 15% of their base compensation, subject to limits in the Puerto Rico Tax Code, for investment in the Plan.

69. Upon information and belief, this provision continued after the Warner-Lambert Company merged with Pfizer in 2000, until the W-L Plan was merged into the "harmonized" PSP Plan in 2002.

70. In addition to numerous mutual funds, the W-L Plan offered two Company Stock Funds: one for employee contributions (called the "Employee Stock Fund") and one for employer contributions (called the "Company Stock Fund").

71. Employer contributions were to be made in cash, provided, however, that the Company could, in the discretion of the Board of Directors, make or authorize such contributions in whole or in part shares of Company Stock in the form of Treasury Shares.

72. Although the W-L PR Employee Stock Fund and the Company Stock Fund invested in the common stock of the Company, amounts temporarily held pending investment and amounts held for disbursement were permitted to be invested elsewhere.

73. Although employees were permitted to transfer employee-contributed funds out of the Company Stock Funds, employees were prohibited from transferring employer-contributed contributions from the Company Stock Funds until age 55.

74. Upon information and belief, participants were encouraged to invest in the W-L PR Employee Stock Funds. While the Plan's SPD acknowledged the higher risk of investing in a single security than a diversified portfolio, the SPD touted Company stock and the Company Stock Funds as having a higher appreciation potential. In addition, Pfizer's SEC filings, incorporated by reference into the W-L SPD, touted the Company's performance and failed to disclose the facts that rendered Company stock and Company Stock Funds an imprudent retirement investment.

75. Warner-Lambert Company also matched 25% of pre-tax dollars or 35% of post-tax dollars of the first 6% of the contributions invested by participants in the W-L Plan, and made an additional contribution of 25% to 65% for participants with at least three years of membership in the Plan, based upon their prior year's contribution and the annual reported earnings per share growth.

**c. Plan Control and Administration**

**i. Board of Directors**

76. Under the W-L Plan, the Board of Directors had the sole responsibility for appointing and removing members of the Warner-Lambert Retirement and Savings Plan Committee ("Retirement Committee"). The Board of Directors also had the authority to elect the Chairman and the Secretary of the Warner-Lambert Retirement Committee, and to establish general investment policy guidelines for the Plan.

77. On information and belief, after Warner-Lambert merged with Pfizer, the respective Pfizer Board of Directors (listed herein as the Pfizer Director Defendants) assumed the duties and responsibilities that the Warner-Lambert Board of Directors had held previously under the Warner-Lambert Plans.

**i. Retirement Committee**

78. Under the W-L Plan, the Retirement Committee consisted of at least three persons who were appointed by the Board of Directors. If the Board of Directors did not act, the Retirement Committee had the authority to elect a Chairman and Secretary of the Committee.

79. The Retirement Committee had responsibility for (a) selecting and monitoring trustees and investment managers, (b) reviewing and monitoring investment activity in connection with the Plan and (c) establishing general investment policy guidelines for the Plan.

80. The Retirement Committee had responsibility to appoint members of the Investment Committee, and to elect the Chairman of the Investment Committee.

81. On information and belief, after Warner-Lambert merged with Pfizer, the work of the Retirement Committee was performed by the Pfizer Plan Committee, chaired by CFO David Shedlarz.

**ii. Investment Committee**

82. The Investment Committee was designated the "named fiduciary" of the W-L Plan, with responsibility to administer the Plan, interpret the Plan, designate investment policies for the Plan, appoint or remove the Trustee or investment managers, and to add or delete investment funds available under the Plan. "Investment Funds" was defined to include the Employee Stock Fund and the Company Stock Fund.

83. The Investment Committee consisted of at least three people. If the Retirement Committee did not act to elect a Chairman of the Investment Committee, the Investment Committee had that authority to elect a Chairman. In addition it had the power to elect a Secretary of the Committee.

84. The W-L Plan also provided that the Retirement Committee and the Investment Committee could allocate its responsibilities among its members and delegate its duties to other persons outside of the Committee.

**F. The Plans' Fiduciaries**

**1. The Nature of Fiduciary Status**

85. ***Named Fiduciaries***. ERISA requires every plan to provide for one or more named fiduciaries of the plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A). The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator. ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

86. ***De Facto Fiduciaries***. ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who, in fact, perform fiduciary functions. Thus, a person is a fiduciary to the extent: "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises

any authority or control respecting management of disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

87. Each of the Defendants was a fiduciary with respect to one or more of the Plans and owed fiduciary duties to those Plans and the Plans' participants under ERISA in the manner and to the extent set forth in the Plan Documents, through their conduct, and under ERISA.

88. As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plans, as well as the Plans' investments, solely in the interest of the Plans' participants and beneficiaries. As fiduciaries, Defendants were required to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

89. ERISA permits the fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3), but insider fiduciaries must still act solely in the interest of participants and beneficiaries, not in the interest of the sponsor. Moreover, all fiduciaries of the Plan were obliged, when wearing their fiduciary hat(s), to act independently of Pfizer. Pfizer had no authority under the governing Plan documents to direct the conduct of any of the fiduciaries with respect to the Plans, investments therein, or the disclosure of information between and among fiduciaries or from fiduciaries to the participants.

### 2. Pfizer Director And Officer Defendants

90. The Pfizer Director Defendants had the ultimate authority for the affairs of Pfizer, not only as the acting authority for Pfizer, but also through the discretionary authority they exercised and were specifically granted under the Pfizer Plans. In particular, the Pfizer Director Defendants exercised Pfizer's authority to appoint, remove, and monitor the Pfizer Committee Defendants, the plan administrators, and the plan trustees. Under Delaware law and Pfizer's Corporate Governance Principles, the Board of Directors "is the ultimate decision-making body of the Company except with respect to those matters reserved to the shareholders. It selects the senior management team, which is charged with the conduct of the Company's business. Having selected the senior management team, the Board acts as an advisor and counselor to senior management and ultimately *monitors* its performance." Pfizer, Inc. Proxy Statement (Schedule 14A) (Mar. 16, 2006), at 6.

91. The Pfizer Director Defendants, at all applicable times, exercised control over the activities of Pfizer's officers and employees that performed fiduciary functions with respect to the Pfizer Plans, including the Pfizer Committee Defendants, and could hire, terminate, and replace these Committee members at will. The Pfizer Director Defendants could appoint or remove any member of the Pfizer Plan Committee at any time, with or without cause, and fill the resulting vacancy.

### 3. Pfizer Compensation Committee And Fiduciary Committees Defendants

92. The Pfizer Plan Committees are respectively named fiduciary for each of the Plans, thereby making the Committee Defendants fiduciaries of the Plans pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). In addition, the Committee Defendants are *de facto* fiduciaries because they exercised discretionary authority and control respecting the

administration and management of the Plans and the disposition of their assets. The Committee Defendants had the power to establish investment guidelines with respect to the assets of the Plans.

93. The Committee Defendants had all powers necessary to administer the Plans. All actions of Committee Defendants concerning the construction, interpretation, and application of the Plans were final, conclusive and binding.

94. The Committee Defendants had the power to appoint or employ advisors to render advice concerning the Plans.

95. Plaintiffs believe and allege that the Committee Defendants had the authority to select the investment Funds offered by each of the Plans.

96. The Committee Defendants had the power to designate in writing the accounts or funds into which the Plans' respective trustees were authorized to invest the Plans' assets. The Committee Defendants had the power to terminate existing investment funds and establish new funds with advance written notice to the respective trustees as well as the power to direct the respective trustee with respect to allocation of contributions, transfers, and withdrawals and distributions among funds.

97. From at least the beginning of the Class Period, Pfizer stock had become an unsuitable and imprudent investment offering for the Plans. Nonetheless, the Committee Defendants and the other Defendants imprudently permitted the Plans to offer, continue to hold and acquire hundreds of millions of dollars in Company Stock. They did so despite the fact that the Committee Defendants knew or should have known that there were undisclosed risks associated with its prescription drugs, including Celebrex and/or Bextra, which artificially inflated the value of Company Stock and the Company Stock Funds and which otherwise

rendered Company Stock and the Company Stock Funds an imprudent and inappropriate investment for participants' retirement savings.

98. The Committee Defendants failed to conduct a proper investigation concerning the nature and extent of the risk to the Plans presented by marketing of risky products (including Celebrex and Bextra), its liability for injuries allegedly related to those products, its liability for improper marketing practices, and its improper accounting practices as alleged herein, which investigation would have been necessary and proper to protect the Plans and their participants and beneficiaries against inevitable losses. An adequate investigation would have revealed to a reasonable fiduciary that investment in Pfizer stock under these circumstances, was imprudent.

99. During the Class Period, the Pfizer Plans were heavily loaded with Company Stock. One hundred percent of Pfizer's matching contributions were made in the form of Pfizer common stock and Pfizer common stock amounted to 77.2% of PSP Plan assets at year-end 2003, and 66.6% of PSP Plan assets at year-end 2004; 83.3% of W-L Plan assets at year-end 2002; 91.6% of PSIP Plan assets at year-end 2000, 88.5% of PSIP Plan assets at year-end 2001, and 82.2% of PSIP Plan assets at year-end 2002. This investment strategy proved to be disastrous. When information emerged publicly in 2004 concerning safety concerns associated with Pfizer's blockbuster drugs Bextra and Celebrex, Pfizer stock fell by approximately 24%, causing hundreds of millions of dollars in losses to the Plans.



two



















































































***





























[redacted]

## VI. THE RELEVANT LAW

462. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. § 1109.

463. ERISA § 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be: personally liable to make good to such plan any losses to the plan resulting from each such breach; personally liable to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary; and subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

464. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes individual participants to seek equitable relief from plan fiduciaries, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

465. ERISA §§ 404(a)(1)(A) and (a)(1)(B), 29 U.S.C. §§ 1104(a)(1)(A) and (a)(1)(B) provide, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

466. These fiduciary duties under ERISA §§ 404(a)(1)(A) and (a)(1)(B) are referred to as the duties of loyalty, exclusive purpose and prudence and are the "highest known to the law." They entail, among other things:

A. The duty to conduct an independent and thorough investigation into, and to continually monitor, the merits of all the investment alternatives of a plan, including in this instance the Pfizer Stock Fund, which invested in Pfizer stock, to ensure that each investment is a suitable option for the plan;

B. The duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor;

C. The duty to diversity investments of plan assets to avoid large losses; and

D. The duty to disclose and inform, which encompasses: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

467. ERISA requires a Plan fiduciary to manage the investment of plan assets, including in this instance the Pfizer Stock Fund, which invested in Pfizer stock. Such a plan fiduciary must also ensure that only prudent investments are offered as plan options, and monitor such investments to ensure that they remain prudent and suitable for the plan. This includes the duty to conduct an independent and thorough investigation into, and to continually monitor, the merits of all the investment alternatives of a plan, including in this instance the Pfizer Stock Fund, which invested in Pfizer stock, to ensure that each investment is a suitable option for the Plans.

468. A fiduciary must avoid conflicts of interest and resolve them promptly when they do occur. As such, a plan fiduciary must always administer a plan with a single eye to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

469. ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for Breach by Co-Fiduciary," provides, in pertinent part:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

470. Co-fiduciary liability is an important part of ERISA's regulation of fiduciary responsibility. Because ERISA permits the fractionalization of the fiduciary duty, there may be, as in this case, several ERISA fiduciaries involved in a given issue, such as the role of company stock in a plan. In the absence of co-fiduciary liability, fiduciaries would be incentivized to limit their responsibilities as much as possible and to ignore the conduct of other fiduciaries. The result would be a setting in which a major fiduciary breach could occur, but the responsible party could not easily be identified. Co-fiduciary liability obviates this. Even if a fiduciary merely knows of a breach, a breach he had no connection with, he must take steps to remedy it:

> [T]he most appropriate steps in th[is] circumstance may be to notify the plan sponsor of the breach, or to proceed to an appropriate Federal court for instructions, or bring the matter to the attention of the Secretary of Labor. The proper remedy is to be determined by the facts and circumstances of the particular case, and it may be affected by the relationship of the fiduciary to the plan and to the co- fiduciary, the duties and responsibilities of the fiduciary in question, and the nature of the breach.

1974 U.S.C.C.A.N. 5038, 1974 WL 11542, at 5080.

471. Plaintiff therefore brings this action under the authority of ERISA § 502(a)(2) for relief to the Plan under ERISA § 409(a) to recover losses sustained by the Plan arising out of the breaches of fiduciary duties by the Defendants in violation of ERISA § 404(a)(1) and ERISA § 405(a).

472. Insofar as any Defendant is sued alternatively as a knowing participant in a breach of fiduciary duty for equitable relief, Plaintiff proceeds, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## VII. CAUSES OF ACTION

### A. Count I: Breach Of Fiduciary Duty To Diversify Against The Pfizer Defendants

473. Plaintiffs incorporate by this reference the paragraphs above.

474. This Count alleges fiduciary breach of the Pfizer fiduciaries' duty to diversify investments of plan assets so as to minimize the risk of large losses *unless* under the circumstances it is clearly prudent not to do so.

475. Under ERISA §404(a)(1)(C) a fiduciary is required to ". . .diversify the investments of a plan so as to minimize the risk of large losses." The individual Plans at issue in this case and the Pfizer Plans as a whole were undiversified for large portions of the Over-Concentration Class Period.

476. The Pfizer Plans at issue in this case are not statutorily exempt from the duty of diversification because of several features of the plans that do not allow them to qualify as eligible investment account plans ("EIAPs") under either IRS regulations or ERISA. In fact, all of the Plans at issue in this case are organized to meet the requirements of Puerto Rico's General Reverse Code, not the IRS Code.

477. As of October 31, 2001, the Warner-Lambert Master Trust, (wherein the W-L Plan's assets were held) held approximately 75% of its assets in Pfizer stock. As of October 31, 2002 the percentage was approximately the same. In 2001, however, equity funds made up approximately 15% of the assets but only approximately 8% in 2002.

478. As of year end 2002, the W-L Plan had a total value of $38,591,000 compared to $46,899,000 at the end of 2001.

479. On June 19, 2000, Pfizer, Inc. completed a merger with Warner-Lambert Company. In connection with the merger, Pfizer, Inc. adopted and assumed the W-L Plan.

480. In 2001 and 2002, the W-L Plan offered eight investment alternatives, two of which were Pfizer stock funds. Six of the eight funds were exclusively or mostly stock funds. All of the investment alternatives were funds sponsored by T. Rowe Price except for the two Pfizer stock funds. T. Rowe Price was the W-L Plan's trustee and charged with fiduciary responsibilities for plan assets and administration.

481. Effective April 2003 the W-L Plan was merged into the PSIP Plan to form a new plan: The Pfizer Savings Plan for Employees Resident in Puerto Rico (PSP Plan).

482. As of the end of 2009, the PSP Plan had a total value, net of liabilities, of $101,119,244. A total of 5,635 persons were participants or beneficiaries of the PSP Plan at the end of the year.

483. As of the end of 2004, the PSP Plan had net assets available for plan benefits of approximately $47.4 million of which $41.9 million was invested in Pfizer stock.

484. In 2001, the PSIP Plan offered only six investment alternatives, five of which were common stock funds. Accordingly, the PSIP Plan participants were not offered a diversified choice of alternative investments.

485. The failure to diversify contributed to the approximately $9.2 million unrealized depreciation of investments for the year ended 2001.

486. For the year ended 2001, while Banco Popular de Puerto Rico was the trustee of the PSIP Plan all of the investment alternatives were offered by "parties-in-interest."

487. As of December 31, 2006, the PSP Plan had total assets of approximately $83.6 million, of which approximately $48 million was invested in Pfizer common stock.

488. As of December 31, 2005, the PSP Plan had net assets available for plan benefits of approximately $77 million of which $45.59 million was invested in Pfizer stock. Of the eight investment alternatives offered to participants, five were common stock investments.

489. As of December 31, 2004, the PSP Plan had net assets available for plan benefits of approximately $80.3 million of which approximately $53.5 million was invested in Pfizer stock. During 2004, Pfizer stock value declined approximately $17 million.

490. As of December 31, 2003, the PSP Plan had net assets available for plan benefits of approximately $92.7 million.

**B. Count II: Failure To Prudently And Loyally Manage The Plans And Assets Of The Plans According To The Plan Documents**

491. Plaintiffs incorporate by this reference the paragraphs above.

492. This Count alleges fiduciary breaches against the following Defendants: the Pfizer Defendants, the Pfizer Director Defendants, and the Pfizer Plan Committee Defendants (collectively, the "Prudence Defendants").

493. As alleged above, during the Prudence Class Period the Prudence Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

494. As alleged above, the scope of the fiduciary duties and responsibilities of the Prudence Defendants included managing the assets of the Plans for the sole and exclusive benefit of the Plans' participants and beneficiaries, and with the care, skill, diligence, and prudence required by ERISA. As such, the Prudence Defendants were responsible for, among other things, selecting prudent investment alternatives and eliminating imprudent investment alternatives for the Plans. Further, with respect to the Plans, each Prudence Defendant were responsible for, among other things, determining whether and to what extent the assets of the Plans (including those that would otherwise be invested in Company stock) should be held in short term low risk investments. The Prudence Defendants were responsible for determining the extent to which employees would be permitted to invest in those investment alternatives (including the Pfizer Stock Funds). As alleged previously, the Prudence Defendants thus exercised *de facto* authority and control with respect to the *de jure* responsibilities of the other Prudence Defendants, making themselves fully responsible for the prudent and loyal fulfillment of the *de jure* responsibilities assigned by the governing Plan documents to the other Prudence

Defendants, without relieving them of any such responsibility. In carrying out these responsibilities, the Prudence Defendants were required to evaluate the merits of the Plans' investments on an ongoing basis and take all necessary steps to ensure that the Plans' assets were invested prudently.

495. Yet, contrary to their duties and obligations under ERISA, the Prudence Defendants failed to loyally and prudently manage the Plan assets. Specifically, during the Prudence Class Period, these Defendants knew or should have known that Pfizer common stock was no longer a suitable and appropriate investment for the Plans, but was, instead, a highly speculative, risky investment in light of the Company's improper business practices, serious mismanagement, accounting improprieties, misstatements, and omissions that caused the price of Pfizer stock to be artificially inflated. The impending collapse of the stock price resulted from these dire circumstances. Nonetheless, during the Prudence Class Period, these Defendants exercised the authority and control that made them fiduciaries to continue to offer Pfizer stock as an investment alternative in the Plans.

496. Throughout the Prudence Class Period, Defendants Pfizer had actual knowledge that its shares had become a risky and inappropriate investment.

497. Moreover, the Prudence Defendants, including Defendant Pfizer, knew or should have known of the facts causing an investment in Pfizer stock to be imprudent and would have learned such facts had they conducted an appropriate independent investigation. Nevertheless, the Prudence Defendants failed to conduct an appropriate independent investigation.

498. The Prudence Defendants' decisions respecting the Plans' investment in Pfizer stock, under the circumstances alleged herein, constituted an abuse of their discretion as ERISA fiduciaries because a prudent fiduciary acting under similar circumstances would have made different investment decisions. Specifically, a prudent fiduciary could not reasonably have

believed that further and continued investment of Plan assets in, Pfizer stock was in keeping with the Plans' settlors' expectations of how a prudent fiduciary would operate.

499. The Prudence Defendants were obligated to discharge their duties to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

500. According to DOL regulations and case law interpreting this statutory provision, a fiduciary's investment or investment course of action is prudent if (a) he has given appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved, including the role the investment or investment course of action plays in that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties; and (b) he has acted accordingly.

501. Given the conduct of the Company as described above, the Prudence Defendants could not possibly have acted prudently when they continued to invest the Plans' assets in Pfizer stock.

502. The Plans did not purport to require the Defendants named herein to offer Pfizer stock as a Plan investment option or invest any Plan assets in Pfizer stock regardless of circumstances. Even if the Plans had sought to require investment in Pfizer stock, Defendants named herein, as ERISA fiduciaries, were duty-bound to adhere to this direction only insofar as it was consistent with ERISA. Because Pfizer stock was not a prudent investment during the Prudence Class Period, Defendants named herein were required by ERISA to suspend investment in the stock and take appropriate action to protect the Plans. Defendants named

herein failed to satisfy this fundamental ERISA obligation and in such failure violated ERISA 404(a)(i)(d).

503. As a consequence of the Prudence Defendants' breach of fiduciary duties alleged in this Count, the Plans suffered significant losses. If the Prudence Defendants had discharged their fiduciary duties to prudently invest the Plans' assets, the losses suffered by the Plans would have been minimized or avoided. Therefore, as a direct and proximate result of the breach of fiduciary duties alleged herein, the Plans, and indirectly Plan participants and beneficiaries, lost over hundreds of millions of dollars of retirement savings.

504. Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), the Prudence Defendants are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

### C. Count III: Breach Of Fiduciary Duty To Disclose Necessary Information To Co-Fiduciaries

505. Plaintiffs incorporate by this reference the allegations above.

506. This Count alleges fiduciary breach against Defendant Pfizer and the Director Defendants.

507. Pursuant to the duties of prudence and loyalty which every ERISA fiduciary owes to the plans pursuant to ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), such fiduciaries are required to disclose to their co-fiduciaries information that they know is unavailable to their co-fiduciaries, but that such co-fiduciaries need to protect the interests of the plan.

508. The following fiduciaries of the Plans possessed non-public information during the Class Period about the risks posed by Pfizer stock, which they knew could be used by other

fiduciaries of the Plans (in particular the Plan Committee Defendants with respect to each Plan) to protect the Plans and their participants and beneficiaries: (1) Defendants Pfizer which were *de jure* fiduciaries to their respective Company Plans by dint of serving as statutory Plan Administrator, as the *de facto* fiduciary that exercised authority and control over the conduct of the Plan Committee Defendants; and (2) the Director Defendants, who were fiduciaries of the Plans because of their authority to appoint and remove the Trustees of the Plans, and as d*e facto* fiduciaries as a result of their communications directed to Plan participants.

509. As previously alleged, the Pfizer Plan Committee Defendants should have sought information concerning the risks posed by an investment in Company stock as part of a thorough and careful investigation of the merits of investment in Company stock during the Class Period, but failed to do so. Nevertheless, those fiduciaries in possession of such knowledge, Pfizer and the Director Defendants, should have supplied that information to the Plan Committee Defendants voluntarily in the fulfillment of the fiduciary duties they owed to the Plans.

510. Defendants Pfizer, and the Director Defendants profited from their breaches of this duty.

511. As a consequence of Defendant Pfizer's, and the Director Defendants' breach of fiduciary duty, the Plans suffered significant losses. If Pfizer and the Director Defendants had discharged their fiduciary duty to disclose necessary information to co-fiduciaries as described above, the losses suffered by the Plans would have been minimized or avoided. Therefore, as a direct and proximate result of the breach of fiduciary duties alleged herein, the Plans, and indirectly Plan participants and beneficiaries, lost hundreds of millions of dollars in retirement savings.

512. Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), Defendants Pfizer and the Director Defendants are liable to restore the losses to the

Plans caused by their breach of fiduciary duties alleged in this Count, to disgorge any profits made through their breach and to provide other equitable relief as appropriate.

**D. Count IV: Failure To Monitor Fiduciaries**

513. Plaintiffs incorporate by this reference the allegations above.

514. This Count alleges fiduciary breach against Defendants Pfizer and Director Defendants (collectively, the "Monitoring Defendants").

515. As alleged above, during the Class Period the Monitoring Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence set forth in ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

516. As alleged above, the scope of the fiduciary responsibilities of the Monitoring Defendants included the responsibility to appoint, remove, and thus, monitor the performance of other fiduciaries.

517. The monitoring duty further requires that appointing fiduciaries have procedures in place so that on an ongoing basis they may review and evaluate whether the "hands-on" fiduciaries and the appointing fiduciaries whom they appoint are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need). In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

518. Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession which they know or reasonably should know that the monitored fiduciaries must have to prudently manage the plan and the plan assets, or which may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

519. The Monitoring Defendants breached their fiduciary monitoring duties by, among other things: (a) failing, at least with respect to the Plans' investment in Company stock, to monitor their appointees, to evaluate their performance, or to have any system in place for doing so, and standing idly by as the Plans suffered enormous losses as a result of their appointees' imprudent actions and inaction with respect to Company stock; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of Pfizer's highly risky and inappropriate business practices, and the likely impact of such practices on the value of the Plans' investment in Pfizer stock; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plans' assets; and (d) failing to remove appointees whose performance was inadequate in that they continued to make and maintain investments in Pfizer stock despite their knowledge of practices that rendered Pfizer stock an imprudent investment during the Class Period for participants' retirement savings in the Plans, and who breached their fiduciary duties under ERISA.

520. As a consequence of the Monitoring Defendants' breach of fiduciary duties, the Plans suffered tremendous losses. If the Monitoring Defendants had discharged their fiduciary monitoring duties as described above, the losses suffered by the Plans would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary

duties alleged herein, the Plans, and indirectly Plan participants and beneficiaries, lost hundreds of millions of dollars in retirement savings.

521. Defendant Pfizer profited from its breach of this duty because its failure to perform its duties resulted in a diminution of the contribution obligation it owed the Plans.

522. Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), the Monitoring Defendants are liable to restore the losses to the Plans caused by their breach of fiduciary duties alleged in this Count, to disgorge profits made and to provide other equitable relief as appropriate.

### E. Count V: Breach Of Fiduciary Duty—Failure To Provide Complete And Accurate Information To The Plans Participants And Beneficiaries

523. Plaintiffs incorporate by this reference the allegations above.

524. This Count alleges fiduciary breach against Defendants Pfizer, and the Director Defendants, and the Plan Committee Defendants (the "Communications Defendants").

525. At all relevant times, as alleged above, the Communications Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

526. At all relevant times, the scope of the fiduciary responsibility of Defendant Pfizer and the other Communications Defendants with respect to each Plan included the communications and material disclosures to the Plans' participants and beneficiaries. In addition, the Director Defendants acted as *de facto* communicating fiduciaries as a result of their extensive communications directly with employees/Plan participants regarding the Company and its likely future prospects. The Director Defendants knew that the employees' retirement savings were invested significantly in Pfizer stock in the Plans. Thus, they knew that their

communications concerned this investment (a Plan benefit), and that these constituted acts of Plan administration under ERISA.

527. The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, not to mislead them regarding the plan or plan assets, and to disclose information that participants need to exercise their rights and interests under the plan. This duty to inform participants includes an obligation to provide participants and beneficiaries with complete and accurate information, and to refrain from providing false information or concealing material information, regarding plan investment options so that participants can make informed decisions with regard to the prudence of investing in such options made available under the plan. This duty applies to all of the Plans' investment options, including investment in Pfizer stock.

528. Because investments in the Plans were not properly diversified (*i.e.* the Defendants chose to invest the Plans' assets, and/or allow those assets to be invested in Pfizer stock), such investment carried with it an inherently high degree of risk. This inherent risk made the Defendants' duty to provide complete and accurate information particularly important with respect to Pfizer stock.

529. The Defendants breached their duty to inform participants by failing to provide complete and accurate information regarding Pfizer's serious mismanagement and improper business practices, public misrepresentations, and the consequential artificial inflation of the value of Pfizer stock, and, generally, by conveying incomplete information regarding the soundness of Pfizer stock and the prudence of investing and holding retirement contributions in Pfizer equity. These failures were particularly devastating to the Plans and their participants because a heavy percentage of the Plans' assets were invested in Pfizer stock during the Class Period and, thus, losses in this investment had a significant impact on the value of participants' retirement assets.

530. Defendants' omissions were material to participants' ability to exercise informed control over their Plan accounts because, in the absence of the information, participants did not know the true risks presented by the Plans' investment in Pfizer stock. Since disclosures to the Plans' participants and beneficiaries of material information about Pfizer stock would have necessitated broader disclosures to the market under the securities laws, acquisition of shares by the Plans during the Class Period would have occurred at a price more reflective of the information disclosed and the stock allocated to participants' accounts in the Plans would have been more fairly valued, resulting in a smaller reduction in Defendant Pfizer's obligation to the Plans.

531. Defendants' omissions and incomplete statements alleged herein were Plan-wide and uniform in that Defendants failed to provide complete and accurate information to any of the Plans' participants. Moreover, they were made in a fiduciary capacity.

532. Defendant Pfizer profited as a result of the fiduciary breach described in this Count.

533. As a consequence of the Communication Defendants' breach of fiduciary duties, the Plans suffered extensive losses. If the Communication Defendants had discharged their duties to provide complete and accurate information to Plan participants as described above, the losses suffered by the Plans would have been minimized or avoided. As a direct and proximate result of the breach of fiduciary duties alleged herein, the Plans, and indirectly Plans participants and beneficiaries, lost a significant portion of their retirement investment.

534. Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409(a), 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plans caused by their breach of fiduciary duties alleged in this Count, and to disgorge any profits made through their breach.

**F. Count VI: Breach Of Duty To Avoid Conflicts Of Interest**

535. Plaintiffs incorporate by this reference the allegations above.

536. This Count alleges co-fiduciary liability against all Defendants.

537. At all relevant times, as alleged above, the Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

538. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on a plan fiduciary a duty of loyalty that requires each fiduciary to discharge his/her duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and its beneficiaries.

539. The fiduciary duty of loyalty entails, among other things, a duty to avoid conflicts of interest and to resolve conflicts promptly when they occur. A fiduciary must always administer a plan with single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor. On information and belief, the compensation and tenure of the Prudence Defendants was tied to the performance of Pfizer stock and/or the publicly reported financial performance of Pfizer. More specifically, as previously alleged, the Prudence Fiduciaries with respect to the Employer Matching Contributions were aware that the fair market value of the stock allocated to participants' accounts reduced the amount of the Company's contribution obligations, dollar for dollar. Accordingly, to the extent that Pfizer stock was inflated by the existence of undisclosed material information that upon disclosure would cause the stock to be revalued downward, the Plans and their participants and beneficiaries were injured and the Company benefited. Since the Prudence Defendants encompass the Company itself and certain of its officers and employees, these fiduciaries faced a stark conflict: exposing the truth about the risks presented by Company stock would benefit the Plans at the expense of the Company. Fiduciaries laboring under such

conflicts, must, to comply with the duty of loyalty, make special efforts to assure that their decision making process is untainted by the conflict and made in a disinterested fashion, typically by seeking independent financial and legal advice obtained only on behalf of the plan.

540. Defendants breached their duty to avoid conflicts of interest and to resolve them promptly by, *inter alia*: failing to engage independent fiduciaries who could make independent judgments concerning the Plans' investment in the Pfizer Fund; failing to notify appropriate federal agencies, including the United States Department of Labor, of the facts and transactions which made Pfizer Stock an unsuitable investment for the Plans; failing to take such other steps as were necessary to ensure that participants' interests were loyally and prudently served; with respect to each of these above failures, doing so to prevent drawing attention to the Company's inappropriate practices; and by otherwise placing the interests of the Company, their co-defendants, and themselves above the interests of the participants with respect to the Plans' investment in Company Stock.

541. As a consequence of all Defendants' breach of fiduciary duties, the Plans suffered losses. If defendants had discharged their duties as described above, the losses suffered by the Plans would have been minimized or avoided. As a direct and proximate result of the breach of fiduciary duties alleged herein, the Plans, and indirectly Plan participants and beneficiaries, lost a significant portion of their retirement investments.

542. Defendant Pfizer profited from its breach of this duty because its failure to perform its duty resulted in a diminution of the contribution obligation it owed to the Plans regarding the Employer Matching Contribution.

543. Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409, 29 U.S.C. § 1109(a), all Defendants are liable to restore losses to the Plans caused by their breach of fiduciary duties alleged in this Count.

**G. Count VII: Co-Fiduciary Liability**

544. Plaintiffs incorporate by this reference the allegations above.

545. This Count alleges co-fiduciary liability against all Defendants (the "Co-Fiduciary Defendants").

546. As alleged above, during the Class Period the Co-Fiduciary Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

547. As alleged above, ERISA § 405(a), 29 U.S.C. § 1105(a), imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach. The Co-Fiduciary Defendants breached all three provisions.

548. **Knowledge of a Breach and Failure to Remedy.** ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. As detailed below, each Defendant knew of certain breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

549. The Plan Committee Defendants were aware of each other's failure to conduct an independent investigation of the merits of the Plans' investments in Company stock. These Defendants were likewise aware of Defendant Pfizer's direction of their activities which resulted in the breach of their own duties, and, at various times in the Class Period, the Company's failure

to provide them with information they needed to perform their duties as it related to the Plans' investment in Company stock.

550. The Director Defendants were aware of the failure of the Pfizer Plan Committee Defendants to conduct an independent investigation of the merits of the Plans' investments in Company stock.

551. Defendants Pfizer was aware of the breaches of each of the other fiduciaries of their respective company plans.

552. Because Defendants knew of the breaches of other Defendants detailed above, yet failed to undertake any effort to remedy these breaches, they are each liable for those breaches.

553. **Knowing Participation in a Breach**. ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), imposes liability on a fiduciary for a breach of fiduciary duty of another fiduciary with respect to the same plan if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach. Defendant Pfizer knowingly participated in the fiduciary breaches of the other Defendants in that it exercised control over their conduct and benefited from the diminution in the contribution obligation to the Plans that resulted from the failure to disclose information which would have resulted in a more proper valuation of the stock allocated to the participants' accounts.

554. **Enabling a Breach**. ERISA § 405(a)(2), 29 U.S.C. § 1105(2), imposes liability on a fiduciary if by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which gives rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

555. Pfizer and their respective Director Defendants, by committing the breaches described previously, enabled the breaches of the Plan Committee Defendants.

556. As a consequence of the Co-Fiduciary Defendants' breach of fiduciary duties, the Plans suffered excessive losses. If the Co-Fiduciary Defendants had discharged their duties as described above, the losses suffered by the Plans would have been minimized or avoided. As a direct and proximate result of the breaches of fiduciary and co-fiduciary duties alleged herein, the Plans, and indirectly the Plan participants and beneficiaries, lost hundreds of millions of dollars in retirement savings.

557. Defendant Pfizer profited from its breach of fiduciary duty because its failure to perform its duty resulted in a diminution of contribution it owed to the Plans regarding Employer Matching Contribution.

558. Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), the Co-Fiduciary Defendants are liable to restore the losses to the Plans caused by their breach of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## VIII. CAUSATION

559. The Plans suffered hundreds of millions of dollars in losses because substantial assets of the Plans were imprudently invested or allowed to be and remain invested by Defendants in Pfizer stock during the Class Period, in breach of Defendants' fiduciary duties.

560. Had the Defendants properly discharged their fiduciary and co-fiduciary duties, including the monitoring and removal of fiduciaries who failed to satisfy their ERISA-mandated duties of prudence and loyalty, eliminating Pfizer stock as an investment alternative when it became imprudent, limiting its availability for investment and/or new investment, divesting the Plans of Pfizer stock when maintaining such an investment became imprudent, and causing the disclosure of complete and accurate material information about Pfizer stock to co-fiduciaries and

to participants and beneficiaries, the Plans would have avoided some or all of the losses that they and, indirectly, the participants and beneficiaries suffered.

## IX. REMEDY FOR BREACHES OF FIDUCIARY DUTY

561. The Defendants breached their fiduciary duties because they knew or should have known the facts as alleged above, and therefore knew or should have known that the Plans' assets should not have been invested in Pfizer stock during the Class Period.

562. As a consequence of the Defendants' breaches, the Plans suffered significant losses.

563. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries…to make good to such plan any losses to the plan . . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ." and the disgorgement of profits made from a breach. Here, in addition to causing losses, Defendant Pfizer profited from its breach and the breaches of its co-fiduciaries by allowing stock to be allocated to participants' accounts at prices inflated by the failure to disclose material information, resulting in the reduction of its contribution obligation. These profits must be disgorged to the Plans.

564. With respect to calculation of the losses to the Plans, breach of fiduciary duties result in a presumption that, but for the breach of fiduciary duties, the Plans would not have made or maintained their investments in the challenged investment and, instead, prudent fiduciaries would have invested the Plans' assets in the most profitable alternative investment available to them. Alternatively, losses may be measured not only with reference to the decline in stock price relative to alternative investments, but also by calculating the additional shares of

Pfizer stock the Plans would have acquired had the Plans' fiduciaries taken appropriate steps to protect the Plans. The Court should adopt the measure of loss most advantageous to the Plans. In this way, the remedy restores the Plans' lost value and puts the participants in the position they would have been in if the Plans had been administered properly.

565. Plaintiffs and the Class are therefore entitled to relief from the Defendants in the form of: (a) a monetary payment to the Plans to make good to the Plans for the losses to the Plans resulting from the breach of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a), 502(a)(2) and (3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (3); (c) injunctive and other appropriate equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3), for knowing participation by a non-fiduciary in a fiduciary breach; (d) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (e) taxable costs and interest on these amounts, as provided by law; and (6) such other legal or equitable relief as may be just and proper.

566. Under ERISA, each Defendant is jointly and severally liable for the losses suffered by the Plans in this case.

## X. CLASS ACTION ALLEGATIONS

567. **Class Definition**. Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Plaintiffs and the following class of persons similarly situated (the "Prudence Class"):

> All persons, other than Defendants, who were participants in or beneficiaries in the PSP Plan, PSIP Plan, W-L Plan, at any time between August 29, 2000 and December 9, 2009 and whose accounts included investments in Pfizer stock.

568. **Prudence Class Period**. The Prudence Class Period begins on August 29, 2000 and continues to December 9, 2009. The fiduciaries of the Plans knew or should have known at least by August 29, 2000 that the Company's prospects were so compromised that Pfizer stock could no longer be offered as a prudent investment for retirement Plans, and/or that corrective disclosures to participants and beneficiaries were required.

569. **Over-Concentration Class Definition.** Plaintiffs also bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(f) and (b)(3) on behalf of a class of Plaintiffs and other plan participants similarly situated:

> All persons other than Defendants, who were participants in or beneficiaries of, the PSP Plan, PSIP Plan, WLPR, and where accounts held 30% or more of their assets in Pfizer common stock and/or more than 70% of their assets in common stock funds at any time between August 29, 2000 and present.

570. **Over-Concentration Class Period.** The Overconcentration Class Period begins on August 29, 2000 and continues to the present.

571. **Numerosity**. The members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of Classes members is unknown to the Plaintiffs at this time, and can only be ascertained through appropriate discovery, based on the Plans' Forms 5500, Plaintiffs believe there were hundreds of thousands or even millions of participants and beneficiaries in the Plans.

572. **Commonality**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Classes. Among the questions of law and fact common to the Classes are:

a) whether Defendants each owed a fiduciary duty to Plaintiffs and members of the Classes;

b) whether Defendants breached their fiduciary duties to Plaintiffs and members of the Classes by failing to act prudently and solely in the interests of the Plans' participants and beneficiaries;

c) whether Defendants breached their fiduciary duties to diversify plan assets;

d) whether Defendants violated ERISA; and

e) whether the Plans have suffered losses and, if so, what is the proper measure of damages.

573. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Classes because: (a) to the extent Plaintiffs seek relief on behalf of the Plans pursuant to ERISA § 502(a)(2), their claim on behalf of the Plans are not only typical to, but identical to a claim under this section brought by any Class member; and (b) to the extent Plaintiffs seek relief under ERISA § 502(a)(3) on behalf of themselves for equitable relief, that relief would affect all Class members equally.

574. **Adequacy**. Plaintiffs will fairly and adequately protect the interests of the members of the Classes and have retained counsel competent and experienced in class action, complex, and ERISA litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

575. **Rule 23(b)(1)(B) Requirements**. Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Classes would create a risk of adjudications with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

576. **Other Rule 23(b) Requirements**. Class action status is also warranted under the other subsections of Rule 23(b) because: (1) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants;

(2) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (3) questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

A. A Declaration that the Defendants, and each of them, have breached their ERISA fiduciary duties to the participants;

B. A Declaration that the Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

C. An Order compelling the Defendants to make good to the Plans all losses to the Plans resulting from Defendants' breach of their fiduciary duties, including losses to the Plans resulting from imprudent investment of the Plans' assets, to restore to the Plans all profits the Defendants made through use of the Plans' assets, and to restore to the Plans all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

D. Imposition of a Constructive Trust on any amounts by which any Defendant profited at the expense of the Plans as the result of breach of fiduciary duties;

E. An Order requiring Defendants to appoint one or more independent fiduciaries to participate in management of the Plans' investment in Pfizer stock;

F. Actual damages in the amount of any losses the Plans suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

G. An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

H. An Order awarding attorneys' fees pursuant to the common fund doctrine, 29 U.S.C. § 1132(g), and other applicable law; and

I. An Order for equitable restitution and other appropriate equitable and injunctive relief against the Defendants.

Dated: November 6, 2012

SQUITIERI & FEARON, LLP

By: Lee Squitieri
Lee Squitieri
Caitlin Duffy
32 East 57th Street
12th Floor
New York, New York 10022
(212) 421-6492

SANTOLI LAW OFFICES
Joseph Santoli
340 Devon Court
Ridgewood, New Jersey 07450
(201) 926-9200

**CERTIFICATE OF SERVICE**

I Lee Squitieri hereby certify that on this 6th day of November, 2012 I caused a copy of the accompanying Second Amended Complaint to be served upon the persons/entities listed below by CM/ECF and/or by Email to:

SIMPSON THACHER & BARTLETT LLP
Lynn K. Neuner
George S. Wang
Lisa Heather Rubin
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

DLA PIPER LLP
John R. Wellschlager
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone: (410) 580-3000
Facsimile: (410) 580-6100

Michael D. Hynes
Rachel V. Stevens
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

*Attorneys for Defendants*

*/s/ Lee Squitieri*
Lee Squitieri